IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG


HORATIO BENTON,

                    Petitioner,

v.                                                          Civil Action No.:   3:17-CV-96
                                                            (GROH)
WARDEN FREDERICK ENTZEL, JR.


                    Respondent.


## REPORT AND RECOMMENDATION

### I.        Introduction

On August 10, 2017, the *pro se* Petitioner filed an Application for Habeas Corpus
Pursuant to 28 U.S.C. § 2241.  ECF No. 1.[1]  Petitioner is a federal inmate housed at
Hazelton FCI and is challenging the validity of his conviction and sentence imposed in
the United States District Court for the Western District of Louisiana. This matter is
pending before the undersigned for an initial review and Report and Recommendation
pursuant to Local Rule of Prisoner Litigation Procedure ("LR PL P") 2.

### II.        Factual and Procedural History

### A.        Criminal Conviction in the Western District of Louisiana[2]

On October 11, 2011, in the Western District of Louisiana, Petitioner was
arrested by state authorities at his residence.  ECF No. 35-2 at 1.  The state authorities

---

[1]  All CM/ECF references in this Report and Recommendation are for the instant case, 3:17-CV-
96, unless otherwise noted.

[2]  All CM/ECF references in Facts sections II.A. and II.B refer to entries in the docket of Criminal
Action Number 3:12-CR-118, Western District of Louisiana, unless otherwise noted.  The information
taken therefrom is available on PACER.

who arrested Petitioner were aware that Petitioner was prohibited from possessing a firearm because of a prior conviction for a crime punishable by imprisonment for more than a year.  Id. at 2.  However, while arresting Petitioner, state authorities noticed what appeared to be the stock of a rifle in the back seat of Petitioner's car, and after obtaining a state search warrant, the authorities searched Petitioner's vehicle and recovered a CN Romarm 7.62 x 39 mm caliber rifle with a loaded magazine.  Id. at 1.  On October 28, 2011, a "Bill of Information" was filed in Union Parish, Louisiana case number 48854, charging Petitioner with Possession of a Firearm by a Convicted Felon.[3]

Petitioner was also indicted in federal court for being a felon in possession of a firearm on April 26, 2012.  ECF No. 1.  At the time of his indictment, Petitioner was in state custody.  ECF No. 4.  The minutes of court for Petitioner's May 21, 2012, initial appearance note that at that time, Petitioner was serving a parole sentence in the State of Louisiana.  ECF No. 10 at 1.

On December 10, 2012, Petitioner entered a plea of guilty to the single count federal indictment, pursuant to a written plea agreement.  ECF Nos. 32, 35.  The District Court accepted Petitioner's plea of guilty on January 4, 2013.  ECF No. 37.  On March 12, 2013, Petitioner was sentenced to 96 months of imprisonment.  ECF Nos. 38, 39.  In the "Judgment in a Criminal Case", the District Court made no recommendation as to whether Petitioner's federal sentence should be served consecutively to or concurrently with his state sentence.  ECF No. 39.  Petitioner did not appeal his conviction.

As described more fully below, on April 10, 2013, Petitioner was sentenced in state court to five years of imprisonment.

---

[3]  A copy of the Bill of Information was filed in the instant case, 3:17-CV-96, in ECF No. 20-1, at 22.

**B.    Post Conviction Remedies**

On May 1, 2015, the Bureau of Prisons ("BOP") sent a letter[4] to Petitioner's

sentencing judge seeking information from the Court, and which advised, in part:

> On June 23, 2014, Mr. Benton's state sentences were satisfied and he was released to the federal detainer to commence the service of his federal sentence as provided by Title 18 U.S.C. § 3585(a).
> . . .
>
> The Bureau strives to administer sentences in accordance with federal statutes, Bureau policy, and the intent of the sentencing Court. It is the Bureau's preference that the federal sentencing Court state its position with respect to a retroactive designation. . . .

The sentencing Court responded by letter[5] dated May 11, 2015, which summarized

Petitioner's state and federal history:

> At th[e] time [this court sentenced] Benton [he] was in state custody. On April 10, 2013, the State of Louisiana sentenced Benton to a five-year term of imprisonment for charges in case number 48,854 and a six-month term of imprisonment in case number 49,111, to run consecutive to each other but concurrent with his federal sentence.
> . . .
> [T]hough this court did not make any statement during sentencing or in the judgment of conviction regarding the consecutive or concurrent nature of potential state court sentences, it was the intent, and now is the recommendation, of this court that those sentences run **consecutively**, due to the extensive criminal history of the defendant.

(Emphasis in original).

Petitioner filed a "Motion for Prior Jail Credit" on September 28, 2015, which

asked the Court to grant Petitioner concurrency of his federal sentence with his state

---

[4]  A copy of the letter was filed in the instant case, 3:17-CV-96, in ECF No. 20-1, at 24, 25.

[5]  A copy of the letter was filed in the instant case, 3:17-CV-96, in ECF No. 20-1, at 106 – 07.

3

sentence imposed on April 10, 2012, "because this offense occurred out of the same transaction."  ECF No. 42 at 1, 3.

On October 1, 2015, the District Court denied Petitioner's motion for prior jail credit, noting that pursuant to 18 U.S.C. § 3585(b) the Attorney General, through the Bureau of Prisons, is charged with calculating a defendant's credit for any time served in federal custody prior to sentencing, and that Petitioner first needed to exhaust his administrative remedies through the BOP before litigating in federal court.  ECF No. 43.

On July 18, 2016, Petitioner filed a motion requesting jail credits, which argued that because Petitioner was arrested on October 1, 2011, and was continuously held in custody, he should be granted credit toward his federal sentence beginning on October 1, 2011.  ECF No. 44.  Petitioner's motion was denied by order of the District Court entered July 20, 2016, which order advised the Petitioner that he "may seek review in federal court by filing a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in the district in which he is incarcerated."  ECF No. 45 at 1.

**C.    Instant § 2241 Proceeding**

On August 10, 2017, Petitioner filed a Writ of Habeas Corpus under 28 U.S.C. § 2241 in the Northern District of West Virginia.  ECF No. 1.  The two grounds alleged by the Petitioner are that the BOP: (1) "[u]nlawfully computed my sentence"; and (2) "unlawfully denied me credit for time served in state or Federal custody."  ECF No. 1 at 5.  Petitioner claims that because his federal sentence was imposed first in time, that "the Federal Court could not have known whether or not the Federal sentence was going to run concurrent with the state time," which Petitioner argues "was rendered to run concurrent with the Federal sentence."    Id. at 5 – 6.  Petitioner claims that the

4

refusal to grant him concurrency of sentences makes his "federal sentence rise from 8 years to almost 10 years." Id. at 6.  Petitioner's two claims essentially assert that the BOP improperly calculated his sentence.

In filling out the Court-approved form for his § 2241 Petition, Petitioner indicated by inserting "n/a" in answer to question 14.A., that he did not present the facts in relation to his claim to the prison's internal grievance procedure.  ECF No. 1 at 7.  However, in answer to question 14.B., Petitioner stated that he presented his claim to the BOP for administrative action and explained that "[a]ll administrative remedies were denied without full [explanation]."  Id. at 8.  As relief, Petitioner asks the Court to grant him all time served credit, correct his federal release date, and release him "on the correct date when calculated with good time rendered."  Id.

On December 12, 2017, this Court ordered Respondent to file an answer, motion or other responsive pleading.  ECF No. 6.  Consistent with this Court's subsequent order [ECF No. 15], the Respondent timely filed a Motion to Dismiss or, Alternatively, for Summary Judgment [ECF No. 19] and memorandum [ECF No. 20] in support thereof on February 7, 2018.

Respondent's Motion to Dismiss, or Alternatively, for Summary Judgment, and accompanying memorandum filed on February 7, 2018, make three arguments.  First, Respondent argues that the BOP properly calculated that Petitioner's federal sentence commenced on June 23, 2014.  ECF No. 20 at 7.  Second, Respondent argues that the BOP acted within the scope of its authority when it denied Petitioner's request for concurrency of his state and federal sentences.  Id. at 9.  Third, Respondent argues that

the BOP properly concluded that Petitioner should not received credit toward his federal sentence for time that was previously credited toward his state sentence.

On February 8, 2018, a notice issued pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), which advised Petitioner of his right and obligation to file a response to the motion to dismiss, or alternatively for summary judgment.  ECF No. 21.  The Roseboro notice was received by Petitioner on February 15, 2018.  ECF No. 22.  Petitioner did not file any response.

### III.    Legal Standard

#### A.    Pro Se Litigants.

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous or malicious.  Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.

Courts must read *pro se* allegations in a liberal fashion.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  However, a complaint is frivolous if it is without arguable merit either in law or in fact.  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (superseded by statute).  The Supreme Court in <u>Neitzke</u> recognized that:

> Section 1915(d)[6] is designed largely to discourage the filing of, and waste of judicial and private resources upon,

---

[6]  The version of 28 U.S.C. § 1915(d) which was effective when <u>Neitzke</u> was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."  As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On

> baseless lawsuits that paying litigants generally do not
> initiate because of the costs of bringing suit and because of
> the threat of sanctions for bringing vexatious suits
> under Federal Rule of Civil Procedure 11. To this end, the
> statute accords judges not only the authority to dismiss a
> claim based on an indisputably meritless legal theory, but
> also the unusual power to pierce the veil of the complaint's
> factual allegations and dismiss those claims whose factual
> contentions are clearly baseless. Examples of the former
> class are claims against which it is clear that the defendants
> are immune from suit. . .

490 U.S. at 327.

### B.   Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007).  Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic

---

review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

recitation of the elements of a cause of action will not do...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570.  In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570.  Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a

claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### C.    Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict."  Anderson, supra, at 256. Thus, the nonmoving party must

present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

10

## IV.    Analysis

It is undisputed by the parties that Petitioner has been continuously in custody since his arrest on October 11, 2011.  The dispute between the parties centers on whether the BOP properly calculated Petitioner's sentence and whether Petitioner's state and federal sentence should be served concurrently with one another. Challenges to the calculation of sentence are properly brought before the Court in a § 2241 proceeding.  Because Petitioner's claims are without merit, this action should be summarily dismissed.

### A.    Authority of BOP to Calculate and Determine Sentence

It is well established that BOP, on behalf of the Attorney General, is responsible for calculating federal terms of imprisonment, including computation of amount of credit after taking custody of the sentenced federal offender.  United States v. Wilson, 503 U.S. 329, 331, 334-35 (1992).  "After a district court sentences a federal offender the [BOP] has the responsibility for administering the sentence."  Barnes v. Masters, -- Fed.Appx. --, 2018 WL 2149299, *3 (May 10, 2018) (quoting Wilson, 503 U.S. at 335). In addition to calculating the length of sentence, the BOP has the authority to "designate the place of [a] prisoner's imprisonment." 18 U.S.C. § 3621(b).

### B.    Sentence Calculation

When calculating a sentence, the BOP must follow the mandate of 18 U.S.C. § 3585(b) which provides that:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which

11

the sentence was imposed; *that has not been credited against another sentence*.

(Emphasis added). Moreover, pursuant to statute, "Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." 18 U.S.C. § 3584(a). The Fourth Circuit has long recognized that, "[w]hen a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence." United States v. Evans, 159 F.3d 908, 911–12 (4th Cir. 1998). Further, in United States v. Wilson, 503 U.S. at 337, the Supreme Court held that under 18 U.S.C. § 3585(b), "Congress made clear that a defendant could not receive a double credit for his detention time." See also United States v. Figuried, 345 Fed. Appx. 864, 865 (4th Cir. 2009) (unpublished). See also United States v. Goulden, 54 F.3d 774, 1995 WL 298086 (4th Cir. May 17, 1995) (credit is only available for time spent in custody which has not been credited against another sentence).

Beginning on May 21, 2012, Petitioner was temporarily borrowed by federal law enforcement, pursuant to a writ of habeas corpus ad prosequendum ("WHCAP"), to answer his federal charges. However, throughout the time Petitioner appeared in federal court pursuant to the WHCAP, he remained in state custody. ECF No. 20-1 at 4, 24, 37. A WHCAP is a " 'mere loan of the prisoner to federal authorities' and does not effectuate a change in custodian. . . " U.S. v. Poole, 531 F.3d 263, 271 (2008). As explained in United States v. Evans, 159 F.3d 908, 912 (4th Cir. 1998):

> A federal sentence does not begin to run, however, when a prisoner in state custody is produced for prosecution in federal court pursuant to a federal writ of habeas corpus *ad*

> *prosequendum.* Rather, the state retains primary jurisdiction
> over the prisoner, and federal custody commences only
> when the state authorities relinquish the prisoner on
> satisfaction of the state obligation.

Here, the Petitioner was borrowed on a WHCAP on May 21, 2012.  Pursuant to Poole and Evans, he remained in state custody from the time of his arrest on October 11, 2011, until he satisfied his state sentence on June 23, 2014.  Petitioner was sentenced federal court on March 12, 2013, before his state sentence was imposed, but while he was in state custody.   The federal "Judgment in a Criminal Case" was silent as to whether the federal sentence would be served concurrently with or consecutively to the state sentence.  ECF No. 20-1 at 15.  The following month, on April 10, 2013, Petitioner was sentenced in state court, and that sentence was ordered to be served concurrently with the federal sentence.   ECF No. 20-1 at 24.

Even though the state sentence was ordered to run concurrently with the federal sentence, pursuant to U.S. v. Evans, 159 F.3d 908, 911-912 (4th Cir. 1998), a federal sentence may only commence on a defendant who is already in state custody "if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence."   Such a designation did not occur.  Rather, as described more fully in section II.B. above, on May 1, 2015, the BOP sent a letter to the sentencing court seeking guidance on whether the federal sentence should be imposed concurrently with the state sentence.  ECF No. 20-1, at 24, 25.    By letter dated May 11, 2015, the sentencing court stated unequivocally, that Petitioner's federal sentence should be served consecutively to his state sentence.  Id. at 106 – 107.

The BOP correctly calculated Petitioner's federal term of imprisonment under 18 U.S.C. § 3585(b)(2).  Petitioner received credit for his state sentence starting from the

October 11, 2011 until his release to federal officials on June 23, 2014.[7] Petitioner cites to no authority which suggests the BOP improperly calculated his sentence.

## IV.    Recommendation

For the foregoing reasons, the undersigned **RECOMMENDS** that Respondent's "Motion to Dismiss or, Alternatively, for Summary Judgment" **[ECF No. 19]** be **GRANTED**, and that Petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 **[ECF No. 1]** be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made and the basis for such objections. A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

This Report and Recommendation completes the referral from the District Court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, and to counsel of record be electronic means.

---

[7]  Respondent states that the BOP gave Petitioner "credit toward his federal sentence for two (2) days, October 1, 2011 and October 2, 2011, that he spent in Louisiana state custody that were not credited toward his state sentence." ECF No. 20 at 11 – 12.

DATED:     July 13, 2018

/s/ *Robert W. Trumble*
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE